UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Joseph Anthony Favors,　　　　　　　　　　Court File No. 14-cv-3473 (JRT/LIB)

　　　　　　　Petitioner,

　　v.　　　　　　　　　　　　　　　　**REPORT AND RECOMMENDATION**

Lucinda Jesson,

　　　　　　　Respondent.

This matter comes before the undersigned United States Magistrate Judge upon Petitioner Joseph Anthony Favors's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1] ("the Petition"). The Court has referred the Petition to the undersigned Magistrate Judge for report and recommendation, pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For reasons discussed herein, the Court recommends **DENYING** Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], with prejudice.

I. **BACKGROUND AND STATEMENT OF FACTS**

On September 17, 2014, Petitioner Joseph Anthony Favors ("Petitioner"), an individual civilly committed to the Minnesota Sex Offender Program (MSOP), filed a Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody with the Court, challenging his civil commitment to MSOP. (Petition [Docket No. 1], at 1). Petitioner argues that:

1. The committing court relied on "illegal evidence" to civilly commit Petitioner;

2. The committing court relied on "false testimonies" to civilly commit Petitioner;

3. Petitioner's counsel during the civil commitment proceeding was ineffective;

4. Petitioner's commitment suffers from "multiple errors," including "selective prosecution," "false witness testimony," and "judicial bias"; and

5. The committing court "arbitrarily" committed Petitioner because "Petitioner does not pose a real, continuing, and serious danger to society[.]"

(Id. at 4-10).

A.  **The Petition and Petitioner's Memorandum in Support, [Docket Nos. 1 & 2]**

The Petition advances five discrete claims; Petitioner supports each with numerous and varied arguments and allegations.

First, Petitioner challenges the sufficiency and admissibility of evidence received during the underlying commitment proceedings. Petitioner argues that the state trial and appellate courts erroneously relied on "illegal" (i.e., inadmissible) hearsay evidence, in violation of federal law; that the courts erroneously determined that Petitioner engaged in a "habitual course of sexual misconduct" as a result of "illegal" hearsay evidence; and that the courts erroneously *presumed* a "course of harmful sexual conduct" as a result of "illegal" evidence and application of incorrect Minnesota state statutory standards. Petitioner generally argues that the state courts violated Petitioner's Fourteenth Amendment due process rights.

Second, Petitioner argues that the state trial and appellate courts received and relied on "false testimonies" to civilly commit Petitioner. Petitioner argues that the state trial and appellate courts improperly found that Petitioner "refused sex offender treatment," in reliance on Dr. Alsdurf's false testimony; that the courts improperly found that Petitioner did not have a "relapse prevention plan," in reliance on Dr. Alberg's and Dr. Alsdurf's false testimony; and that the district court made numerous, erroneous findings of fact. Petitioner vaguely references

Fourteenth Amendment due process protections and argues that his commitment "rests in part on false testimony" in violation of "federal law." (Pet.'s Mem. [Docket No. 2], at 27).

Third, Petitioner argues that his attorney for the civil commitment proceeding, identified as "Joe Dalager," was ineffective, in violation of Petitioner's Sixth Amendment rights. Petitioner argues that Mr. Dalager had numerous conflicts of interests, failed to raise sufficient challenges on direct appeal, and only asserted "vague arguments," among other alleged shortcomings.

Fourth, Petitioner argues that the underlying commitment court committed "multiple errors." Petitioner argues that he was subject to "selective prosecution" and confined for criminal, "non-sexual" reasons; that he was denied statutory pre-petition screening procedures in violation of Minn. Stat. § 253B.07, subd. 1(a)(1), *et seq.*; that he was denied the opportunity to represent himself; and that he was subject to judicial bias because the presiding judge received and relied on false testimony and had numerous conflicts of interest. Petitioner only generally references violations of "federal law" and Fourteenth Amendment due process.

Finally, Petitioner argues that the Government "arbitrarily" civilly committed him. Petitioner's fifth claim largely advances insufficiency-of-the-evidence arguments. Petitioner argues that he does *not* suffer from antisocial personality disorder and that the court erroneously civilly committed Petitioner based on this diagnosis; that Petitioner is *not* violently sexually deviant under applicable Minnesota state statutes; that MSOP cannot treat antisocial personality disorder, rendering commitment for said disorder unconstitutional; that the DSM-V has "discontinued" sexual dysfunction NOS, rendering the diagnosis inappropriate; and that the evidence never demonstrated that Petitioner met the criteria for a sexual dysfunction NOS diagnosis. Again, Petitioner generally argues that his "arbitrary" commitment violates federal law and his Fourteenth Amendment right to due process.

3

### B. Relevant Underlying Proceedings[1]

In 2008, Dakota County, Minnesota filed a petition to civilly commit Petitioner to the Minnesota Sex Offender Program (MSOP). Favors v. Jesson, No. 13-cv-108 (JRT/LIB), 2013 WL 4052668, at *1 (D. Minn. Aug. 9, 2013) (citing In re Civil Commitment of Favors, No. A09-2306, 2010 WL 2486349, at *2 (Minn. Ct. App. June 22, 2010) ("Favors I")). The state district court determined that Petitioner is a sexually dangerous person and a sexual psychopathic personality and committed Petitioner to MSOP for an indeterminate term. Favors I, at *3. Petitioner appealed, and on June 22, 2010, the Minnesota Court of Appeals affirmed the district court's findings. Id. at *1. The Minnesota Supreme Court declined review on August 24, 2010. Id. (rev. denied Minn. Aug. 24, 2010); (Resp. App'x [Docket No. 11-2], at A-144).

On or about February 7, 2011, Petitioner initiated his first state court post-commitment proceedings and filed his first state court habeas petition in Washington County, Minnesota. See Favors v. Jungers, No. A11-2055, 2012 WL 2079848, at *2 (Minn. Ct. App. June 11, 2012) ("Favors II"). Relevant to his commitment to MSOP, Petitioner argued that he faced "ongoing retaliation" in violation of the Eighth Amendment as a result of reporting inappropriate behavior by an MSOP employee. Id. After some confusion concerning the correct venue for Petitioner's post-commitment claims (the respondents, at that time, for an unknown reason, filed their answer to the petition in Carlton County as opposed to Washington County), the details of which are not relevant to the present Petition before the Court, the Minnesota Court of Appeals (affirming Washington County's decision below) transferred Petitioner's claims concerning his commitment to MSOP to Carlton County. Id. at *4.

---

[1] The Court also articulated relevant background/underlying state court information in its October 8, 2014, Order, [Docket No. 9].

4

Relevant to the claims advanced in the present Petition, in March 2013, Petitioner initiated a *second* round of state court post-commitment proceedings, arguing:

> (1) the evidence was insufficient to prove that he is an SDP and SPP; (2) the judge who presided over his civil-commitment trial was biased; (3) three statutory violations violated his due-process right; (4) his counsel was ineffective; (5) the district court denied him his right to represent himself; and (6) the prosecutor selectively prosecuted him.

Favors v. Jesson, No. A13-1579, 2014 WL 997055, at *1 (Minn. Ct. App. Mar. 17, 2014), review denied (May 28, 2014) ("Favors III"). The district court denied the petition without a hearing, noting that "habeas proceedings cannot be used as a substitute for appeal" and that the district court was "limited to considering jurisdictional and constitutional challenges." Id. Petitioner appealed, and on March 17, 2014, the Minnesota Court of Appeals affirmed. Id.

In holding that Petitioner's March 2013 petition "failed to present a case for issuing a writ of habeas corpus[,]" the Minnesota Court of Appeals (i.e., the Favors III court) noted that a habeas petition "may not be used as a substitute for an appeal[.]" Id. at *1, *2 (quoting State ex rel. Shannon v. Tahash, 121 N.W.2d 59, 61 (Minn. 1963)). "A district court properly denies the petition when the petitioner could have raised the underlying claims through other legal means." Favors III, at *2 (citing Kelsey v. State, 283 N.W.2d 892, 893-94 (Minn. 1979) (disapproving of "attempt . . . to use habeas corpus as a means of obtaining review of trial errors," reasoning that "[d]irect appeal and the postconviction remedy . . . are available for that purpose" and, therefore, "the need for another means of raising the claim of trial error is . . . not apparent"); State ex rel. Butler v. Swenson, 66 N.W.2d 1, 4 (Minn. 1954) ("Questions which should be determined at the trial or in a motion for a new trial or reviewed through some other regular legal procedure have no place in a habeas corpus proceeding.")).

The Minnesota Supreme Court denied further review on May 28, 2014.

## II.     THE PETITION, [DOCKET NO. 1]

### A.     Standard of Review

"[A] district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) instructs federal courts to engage in a "limited and deferential review of underlying state court decisions." Mark v. Ault, 498 F.3d 775, 782-83 (8th Cir. 2007). Under the AEDPA, a federal court may not grant relief to a petitioner with respect to any claim that was adjudicated on the merits in state court unless the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the [U.S.] Supreme Court; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Federal courts consider a state court decision "contrary to" precedent when a state court "arrives at a conclusion opposite to that reached by the [U.S. Supreme] Court on a question of law" or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. Williams v. Taylor, 529 U.S. 362, 413 (2000). "[C]learly established Federal law" refers to the holdings, as opposed to the dicta, of [U.S.] Supreme Court opinions that had been released prior to the date on which the state court issued its decision. Bobadilla v. Carlson, 570 F. Supp. 2d 1098, 1102-03 (D. Minn. 2008) aff'd, 575 F.3d 785 (8th Cir. 2009) (citing Carey v. Musladin, 549 U.S. 70 (2006)).

An "unreasonable application" of federal law occurs when the state court "correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case." Id. at 408. Federal courts "may not issue the writ simply because it 'concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.'" Lyons v. Luebbers, 403 F.3d 585, 592 (8th Cir. 2005) (quoting Williams, 529 U.S. at 411). In reviewing state court decisions, a "federal court also presumes that the state court's factual determinations are correct." Lee v. Gammon, 222 F.3d 441, 442 (8th Cir. 2000). A petitioner can only rebut this presumption by "clear and convincing evidence." Id.; 28 U.S.C. § 2254(e)(1).

Significantly, the AEDPA establishes a one-year statute of limitations for all Section 2254 habeas actions:

> A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of –
>
> **(A)** the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> **(B)** the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> **(C)** the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> **(D)** the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Additionally, "[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

pending shall not be counted toward any period of limitation under this section." 28 U.S.C. § 2244(d)(2) (emphasis added).

      **B.**      **Respondent has waived any and all potential timeliness arguments.**

As an initial matter, the undersigned finds that Respondent has waived any and all arguments concerning the timeliness of Petitioner's Section 2254 Petition. On October 8, 2014, the Court explicitly expressed concern regarding the timeliness of the present Petition: "The foregoing dates suggest that there is reason to be concerned about the timeliness of this action." (Order [Docket No. 9], at 7). Accordingly, the Court ordered that "if Respondent believes that Petitioner is ineligible for habeas corpus relief under § 2254 because his Petition is untimely, Respondent may raise that defense by filing a motion to dismiss, along with any apposite supporting evidentiary materials[.]" (Id.) In response, Respondent filed an *answer* to the Petition, electing to respond to the substance of the Petition and explicitly stating that "Respondent is unable to discern untimeliness of the petition." (Answer [Docket No. 11], at 2). The Court finds that Respondent affirmatively *declined* to address the timeliness of the Petition and, as a result, waived all arguments concerning the applicable statute of limitations. See Day v. McDonough, 547 U.S. 198, 211, n.11 (2006) ("[S]hould a State intelligently choose to waive a statute of limitations defense, a district court would not be at liberty to disregard that choice."); Coppage v. Redman, 429 F. App'x 626, 626 (8th Cir. 2011) ("While a district court may sua sponte consider the timeliness of a section 2254 petition, the statute-of-limitations defense remains a non-jurisdictional affirmative defense that a state may waive.").

The Court thus proceeds to the substance of Petitioner's claims.

      **C.**      **The Petition fails to state an actionable claim for relief.**

As articulated above, Petitioner challenges his civil commitment to the MSOP.

8

> Incarceration pursuant to a state criminal conviction may be by far the most common and most familiar basis for satisfaction of the "in custody" requirement in § 2254 cases. But there are other types of state court judgments pursuant to which a person may be held in custody within the meaning of the federal habeas statute. For example, federal habeas corpus review may be available to challenge the legality of a state court order of civil commitment or a state court order of civil contempt

Duncan v. Walker, 533 U.S. 167, 176 (2001).

### 1. Petitioner had no Sixth Amendment right to counsel.

Petitioner argues that his attorney for the underlying civil commitment proceedings was ineffective and conflicted and, as a result, violated Petitioner's Sixth Amendment right to counsel. Petitioner articulates numerous arguments in support of his ineffective assistance of counsel claim, the details of which are not immediately relevant to the present analysis. Although Petitioner specifically alleges Sixth Amendment constitutional violations, Petitioner fails to demonstrate that he was *entitled* to Sixth Amendment protections during the pendency of the underlying civil commitment proceedings. The Court is unable to discern any violation of the Constitution or other law of the United States relative to Petitioner's ineffective assistance of counsel claim.

As articulated in the Standard of Review section, supra, the Court entertains Section 2254 petitions "only on the ground that [the petitioner] is in custody in violation of the [U.S.] Constitution or laws or treaties of the United States." 28 U.S.C. § 2254. See also Wainwright v. Goode, 464 U.S. 78, 83 (1983) (per curiam) ("It is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension."); Estelle v. McGuire, 502 U.S. 62, 67 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, law or treaties of the United States.").

"[T]he Sixth Amendment right to the effective assistance of counsel does not apply in a civil-commitment proceeding." Beaulieu v. Minnesota Dep't of Human Servs., 798 N.W.2d 542, 548 (Minn. Ct. App. 2011) aff'd, 825 N.W.2d 716 (Minn. 2013) (citing U.S. Const. amend VI (providing for certain rights of "the accused" "[i]n all criminal proceedings"); see also Kansas v. Hendricks, 521 U.S. 346, 369 (1997) (holding that double jeopardy clause of Fifth Amendment does not apply because civil commitment is civil, not criminal, in nature); Carty v. Nelson, 426 F.3d 1064, 1073 (9th Cir. 2005) (holding that Sixth Amendment right to confrontation does not apply in civil-commitment proceedings)). "The right to counsel varies depending on the context in which it is invoked[.]" United States v. Veltman, 9 F.3d 718, 721 (8th Cir. 1993) (recognizing only a *statutory* right to counsel in a civil commitment proceeding, as opposed to a constitutional right to counsel).

In the present case, Sixth Amendment rights did not attach during Petitioner's underlying civil commitment proceedings. Rather, Petitioner's right to counsel at that time was merely *statutory*. See Minn. Stat. § 253B.07, subd. 2c (Right to Counsel). Because Petitioner had no federal constitutional right to effective assistance of counsel during his civil commitment proceedings, Petitioner fails to identify a violation of the Constitution of the United States. Petitioner's ineffective assistance of counsel claim necessarily fails, and therefore, it is not properly before the Court.

### 2. The state post-commitment courts disposed of several of Petitioner's claims on non-federal grounds.

Assuming, for purposes of the present analysis, that Petitioner *did* properly present his remaining claims to the highest available Minnesota state court (via his second round of post-commitment proceedings, see Favors III), and that he presented the claims as violations of his

*federally protected, constitutional rights*,[2] the state post-commitment courts denied Petitioner's claims on *non-federal grounds*, effectively precluding review by this Court.

Federal courts will not review a state court decision that rests on "independent and adequate state procedural grounds." Barnett v. Roper, 541 F.3d 804, 808 (8th Cir. 2008) (quoting Coleman v. Thompson, 501 U.S. 722, 729-30 (1991)). "A federal district court is precluded from substantively considering a habeas corpus claim that a state court has disposed of on *independent and adequate non-federal grounds*, including state procedural grounds." Clemons v. Luebbers, 381 F.3d 744, 750 (8th Cir. 2004) cert. denied, 546 U.S. 828 (2005) (emphasis added). When a state appellate court expressly declines to address the merits of a particular post-conviction claim pursuant to state procedural rules, the claim is "procedurally defaulted" for federal habeas corpus purposes:

> As the Eighth Circuit Court of Appeals explained in Hall v. Delo, 41 F.3d 1248, 1250 (8th Cir. 1994), "[a] federal claim has not been fairly presented to the state courts," and is therefore procedurally defaulted, "when the state court has declined to decide the federal claim on the merits because the petitioner violated a state procedural rule."

---

[2] It is well established that a federal court will not entertain a petition for a writ of habeas corpus on behalf of a state detainee unless he has first exhausted all available state court remedies. 28 U.S.C. § 2254(b); O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999); Rose v. Lundy, 455 U.S. 509 (1982). The "exhaustion of state remedies" requirement is based on the principles of comity and federalism; its purpose is to ensure that state courts are given the first opportunity to correct alleged errors raised by state detainees. O'Sullivan, 526 U.S. at 844; Rose, 455 U.S. at 518-19; Duncan v. Henry, 513 U.S. 364, 365-66 (1995) (per curiam). To satisfy the exhaustion of state court remedies requirement, a state prisoner or other detainee must fairly present his or her claims to the highest available state court before seeking relief in federal court. O'Sullivan, 526 U.S. at 845.

The "[m]ere similarity between . . . state law claims and . . . federal habeas claims is insufficient" to satisfy the fair presentation/exhaustion requirement. Carney v. Fabian, 487 F.3d 1094, 1097 (8th Cir. 2007). The petitioner must "have referred to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue in a claim before the state courts." Id. at 1096.

In Miller v. Minnesota, the petitioner wholly failed to mention federal law or the U.S. Constitution in his direct appeal. As a result, even though he raised a claim on the direct appeal below similar if not virtually identical to his habeas claim, the Minnesota Supreme Court was not given a full and fair opportunity to consider the federal aspect of petitioner's claim. Instead, the state courts examined the issue only in the context of state law and state precedent. Miller v. Minnesota, No. 09-cv-2405 (DWF/LIB), 2011 WL 5593181, at *5 (D. Minn. Aug. 16, 2011), report and recommendation adopted, No. 09-cv-2405 (DWF/LIB), 2011 WL 5570697 (D. Minn. Nov. 16, 2011).

Loye v. Roy, No. 11-cv-3715 (ADM/JSM), 2012 WL 435724, at *2 (D. Minn. Jan. 12, 2012) report and recommendation adopted, No. 11-cv-3715 (ADM/JSM), 2012 WL 435304 (D. Minn. Feb. 10, 2012). See also Satter v. Leapley, 977 F.2d 1259, 1261 (8th Cir. 1992) ("Ordinarily, a federal court reviewing a state conviction in a 28 U.S.C. § 2254 proceeding may consider only those claims which the petitioner has presented to the state courts in accordance with state procedural rules.").

A petitioner violates Minnesota state court procedural rules when the petitioner raises a claim during state post-conviction (or in the present post-commitment) proceedings that he had not raised when he had the first opportunity to do so; Minnesota solidified this principle in State v. Knaffla: "where direct appeal has once been taken, all matters raised therein, and all claims known but not raised, will not be considered upon a subsequent petition for postconviction relief." 243 N.W.2d 737, 741 (Minn. 1976).

In Favors III, the Minnesota Court of Appeals explicitly denied a number of Petitioner's claims[3] because Petitioner *should have raised the claims sooner, namely, on direct appeal in the state courts*. First, with respect to Petitioner's claim concerning the sufficiency of the evidence presented during the civil commitment proceedings[4] and arguments concerning the receipt of inadmissible and/or "illegal" evidence in violation of applicable rules of evidence, the Minnesota Court of Appeals held that such arguments are appropriately first raised on direct appeal. "Reception of inadmissible evidence does not render a judgment subject to collateral attack in a

---

[3] In his Petition, Petitioner represents that he previously raised all claims advanced in the present Petition in his second round of state post-conviction proceedings, i.e. Favors III. (Petition [Docket No. 1], at 5-11). Accordingly, the Court construes Petitioner's claims in the present case as identical to those claims presented to the Minnesota Court of Appeals in Favors III.

[4] Although the Favors III court does not go into detail concerning the precise nature of Favors's "insufficiency of the evidence" arguments, the Court now presumes, in Petitioner's interests, that they are identical to those advanced in the present Petition. In the event Petitioner's present claims are *not* identical to those advanced during Petitioner's state post-conviction proceedings, the Court would necessarily find that Petitioner had not exhausted his state court remedies prior to presenting the claims to the present Court. See footnote 2, supra.

12

habeas corpus proceeding." Favors III, at *2 (citing State ex rel. Farrington v. Tahash, 115 N.W.2d 921, 922 (Minn. 1962)). The Favors III court explicitly declined to reach the merits of *any* of Petitioner's arguments concerning the sufficiency and/or propriety of evidence, dismissing the claims as decidedly "beyond the scope of his [state] habeas-corpus petition." Favors III, at *4. Importantly, the Favors III court did *not* discuss any of Petitioner's "sufficiency of the evidence" claims in the context of federal rights and/or case law.

Favors III also addressed Petitioner's claims that the state judge presiding over the underlying civil commitment proceedings was biased, accepted false testimony, and made erroneous factual findings.[5] The state appellate court declined to reach the merits of Petitioner's varied claims, noting that Petitioner failed to raise the aforementioned claims "to the district court at his trial." Id. at *2 (citing Butler, 66 N.W.2d at 4 ("Questions which should be determined at the trial or in a motion for a new trial or reviewed through some other regular legal procedure have no place in a habeas corpus proceeding.")). Again, the Minnesota Court of Appeals declined to decide Petitioner's federal claims on the merits because Petitioner violated a state procedural rule.

Third, the Favors III court addressed Petitioner's claim that the Government had violated Petitioner's due process rights by failing to appropriately conduct the applicable statutory "pre-

---

[5] In his petition, Favors claims that the commitment judge was biased against him on the grounds that the judge (1) mistakenly believed that Favors committed sexual misconduct while on parole; (2) accepted and failed to critically examine false testimony; (3) overruled or ignored at least one evidentiary objection made by Favors; (4) was employed by Dakota County and, consequently, a co-employee with the prosecutor and the person who petitioned to civilly commit Favors; and (5) declined to permit Favors to "dismiss his attorney," stating that the attorney was "'one of the best attorneys in the state.'"

Favors III, at *2.

13

screening" process.[6] The state court explicitly held that Petitioner "fail[ed] to show how the alleged statutory violations deprived him of his life, liberty, or property." Favors III, at *3. The court expressly *rejected* Petitioner's attempt to "recast" state *statutory* claims as *due process* violations "when he, at most, vaguely developed his due-process claims in his petition and on appeal." Id. The state appellate court denied Petitioner's claims as procedurally improper and "beyond the scope of his petition." Id.

Fourth, the Favors III court declined to reach the merits of Petitioner's claim concerning selective prosecution and denied the claim for independent, non-federal reasons: Petitioner cited no authority, nor was the court aware of any authority, extending "selective prosecution" rules and rights – applicable in the criminal law context – to civil commitment proceedings. Id. at *4.

Finally, the Favors III court held that Petitioner's claims concerning the district court's findings regarding Petitioner's antisocial personality disorder (which Petitioner claimed is not treatable and from which Petitioner alleged he is in remission) and paraphilia sexual dysfunction (from which Petitioner alleged he no longer suffers) were also procedurally defaulted, as *any* challenges concerning the sufficiency of the evidence presented during the underlying civil commitment proceedings should have been raised during direct appeal. Id.

The Minnesota Court of Appeals affirmed the state district court's denial of Petitioner's second state habeas petition without a hearing, explicitly disposing of each of Petitioner's aforementioned claims for independent state, and *non-federal*, reasons and expressly declining to reach the substantive merits of Petitioner's claims.

---

[6] Favors claimed in his petition that his civil-commitment prepetition screening process was plagued by three statutory violations that violated his right to due process: (1) no one interviewed him before petitioning to civilly commit him; (2) *one* person, instead of a *team* of people, performed the prepetition investigation; and (3) due to a conflict of interest, the petitioner effectively was a part of the screening team.

Favors III, at *3.

14

Even if Petitioner now asserts that the state courts erred in concluding that his claims were procedurally or otherwise (for non-federal reasons) barred, this Court is nevertheless barred from now addressing the Minnesota Court of Appeals' determination that Petitioner's claims were procedurally barred. See Loye, 2012 WL 435724, at *4 ("Petitioner may believe that the state courts somehow misapplied the Knaffla rule, but that is not an argument that could be raised and considered here, because this Court cannot review and overturn a state court's application of a state procedural rule.") (citing Murray v. Hvass, 269 F.3d 896, 899 (8th Cir. 2001) ("it is not the province of a federal court to decide whether a matter ought to be considered procedurally defaulted under state law") cert. denied, 535 U.S. 935 (2002); May v. Iowa, 251 F.3d 713, 716 (8th Cir. 2001) ("[w]e may not disturb a state court decision interpreting state law on habeas review . . . and thus we reject [the petitioner's] contention that he did not default his three ineffective assistance of counsel claims"); Clemons, 381 F.3d at 751 ("federal courts do not look at whether state courts have correctly applied their own procedural rules[;] [t]hey simply determine whether those procedural rules were applied to bar the claim")).

With respect to Petitioner remaining claims, the Favors III court cited and applied *only* state law. Because the state post-conviction court dismissed Petitioner's claims concerning (1) insufficient and/or "illegal" evidence; (2) judicial bias and "false testimonies"; (3) statutory violations; (4) selective prosecution; and (5) evidentiary concerns regarding Petitioner's diagnoses on independent and adequate state procedural grounds, all of Petitioner's remaining claims are not now properly before the Court.

### D. Certificate of Appealability

A Section 2254 habeas corpus petitioner cannot appeal an adverse ruling on his petition

15

unless he is granted a Certificate of Appealability ("COA"). 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A COA cannot be granted unless the petitioner "has made a substantial showing of the denial of a [federal] constitutional right." 28 U.S.C. § 2253(c)(3). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack v. Daniel, 529 U.S. 473, 484 (2000).

In the present case, the Court finds that it is highly unlikely that any other court, including the Eighth Circuit Court of Appeals, could decide Petitioner's claims any differently than the Court has decided them here. Petitioner has not identified, and the Court cannot independently discern, anything novel, noteworthy, or worrisome about this case that warrants further appellate review. The Court therefore recommends that Petitioner not be granted a COA in this matter. See, e g., Samuelson v. Roy, No. 13-cv-3025 (PAM/LIB), 2014 WL 2480171 (D. Minn. May 28, 2014).

The Court recommends that Petitioner's Petition for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody, [Docket No. 1], be **DENIED with prejudice**.

## III. CONCLUSION

For the foregoing reasons, and based on all of the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED:**

That Petitioner's Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody, [Docket No. 1], be **DENIED with prejudice**.


Dated: July 20, 2015                    s/Leo I. Brisbois
                                        Leo I. Brisbois
                                        U.S. MAGISTRATE JUDGE

# N O T I C E

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).

**Under Advisement Date:** This Report and Recommendation will be considered under advisement 14 days from the date of its filing. If timely objections are filed, this Report and Recommendation will be considered under advisement from the earlier of: (1) 14 days after the objections are filed; or (2) from the date a timely response is filed.